UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT JAMES CHAPMAN (B78512), | ) | |
| | ) | |
| Petitioner, | ) | Case No. 17 C 9190 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| ALEX JONES, Acting Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Robert James Chapman, a prisoner at the Menard Correctional Center, brings this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his 2007 first degree murder conviction from the Twelfth Judicial Circuit Court, Will County, Illinois. The Court denies the petition on the merits and declines to issue a certificate of appealability.

## I.     Background

The Court draws the following factual history from the state court record. *See* Dckt. No. 10. State court factual findings, including facts set forth in state court opinions, have a presumption of correctness, and Petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted). Petitioner has not made such a showing.

Petitioner stabbed Cassandra Frazier to death in the apartment they shared in Joliet, Illinois on the evening of February 22, 2005. *Illinois v. Chapman*, 2012 IL 111896, ¶ 3, 358 Ill. Dec. 640, 965 N.E.2d 1119 (2012). Petitioner confessed to the murder in a police statement taken shortly after the killing. *Id*. at ¶ 4.

Petitioner considered Frazier to be his wife, and the couple often argued. *Id.* The jury heard evidence regarding two prior incidents in the months leading up to the murder. In the first, Petitioner was convicted of domestic battery for an October 2003 incident with Frazier. *Id.* at ¶ 11.

In the second incident, occurring in the fall of 2004, the jury heard that Petitioner set a fire at Frazier's apartment. *Id.* at ¶¶ 11–13. Petitioner told the pastor of a church that he and Frazier once attended that he was concerned that Frazier might break up with him. *Id.* at ¶ 13. At trial, the pastor testified that Petitioner told him that "he would rather see [Frazier] dead before he would see her with anyone else." *Id.* Shortly thereafter, on November 2, 2004, the pastor learned that a fire had been set at Frazier's apartment. *Id.* The pastor confronted Petitioner, who admitted setting the fire. *Id.* Petitioner explained that he was angry at Frazier because he felt her children and church were more important to her than their relationship. *Id.* Petitioner related to the pastor that "he wanted her to see how it felt to not have anything." *Id.*

In his police statement, Petitioner explained that on the night of the murder, he consumed alcohol and crack cocaine after work before returning to the apartment that he shared with Frazier. *Id.* at ¶ 4. Frazier started yelling at him when he arrived around 9:45 p.m. *Id.* Petitioner took a shower and went to bed with Frazier. *Id.* She yelled at him again, causing Petitioner to get out of the bed and pack his clothes in a box that he placed by the door. *Id.* He then returned to bed naked. *Id.*

Petitioner explained that Frazier stabbed him in the leg after he got back into bed. *Id.* at ¶ 5. He would later describe the injury as "just [a] graze[]" to his leg. *Id.* at ¶ 7. Petitioner grabbed the knife from Frazier, cutting his hand in the process. *Id.* ¶ 5. At this point, Petitioner

said to Frazier, "you want to stab a [N word], I will let you see how it feels."  *Id*.  Petitioner

then stabbed Frazier in the bed.  *Id*.  The two fell onto the floor, resulting in Petitioner

straddling over Frazier.  *Id*.  He continued to stab her in her upper body and neck.  *Id*.

Petitioner explained that he stopped stabbing Frazier after she said she loved him.  *Id*.

He left the knife sticking into Frazier's neck.  *Id*.  Petitioner left the bedroom and put on his

clothes and boots.  *Id*. at ¶ 6.  He returned to the bedroom to find Frazier had removed the knife

from her neck, which was now badly bleeding.  *Id*. at ¶¶ 6–7.  Petitioner searched through

Frazier's purse on the kitchen table for money to pay a taxi.  *Id*. at ¶ 6.

Frazier crawled into the living room and made it onto her feet.  *Id*. at ¶ 7.  She got to the

front door with her hand on the doorknob when Petitioner threw her back onto the floor.  *Id*.

Petitioner later told the police that he wanted to stop Frazier from leaving the apartment out of

fear that she would go for help and a neighbor would become involved.  *Id*.  Petitioner

estimated he left the apartment three to four minutes after he stopped stabbing Frazier.  *Id*.

Around 10:30 p.m., Karen Bergin was driving in Joliet when she spotted Petitioner

running on the street.  *Id*. at ¶ 8.  Bergin testified that Petitioner had his arms up and seemed

upset.  *Id*.  She stopped and Petitioner approached the car.  *Id*.  She saw blood on Petitioner's

shirt and a minor cut on the palm side of his left hand.  *Id*.  Bergin gave Petitioner a napkin that

he used to control the bleeding.  *Id*.

Petitioner told Bergin to call 911, which she did.  *Id*.  Bergin explained that, as they

waited for an ambulance to arrive, Petitioner told her that he "did something real bad," he "sold

drugs," and he and Frazier "had a fight about the drugs."  *Id*.  Petitioner also told Bergin that

"she had a knife," and he "took it from her," but he did not say what he did with the knife.  *Id*.

3

Both an ambulance and Joliet police detective Scott Cammack responded to the 911 call. *Id*. at ¶ 9. Detective Cammack observed the cut to Petitioner's finger, and a small cut on his right leg. *Id*. Petitioner was taken to the hospital where he received eight stitches for the cut on his finger, and four for the cut on his leg. *Id*.

Petitioner was released from the hospital that same evening and taken to the police station. *Id*. Detective Cammack had a conversation with Petitioner followed by two audio-taped interviews with Petitioner. *Id*. at ¶ 4. Detective Cammack testified about the conversation, and the two recorded interviews were played for the jury at trial. *Id*.

The autopsy showed that Frazier suffered 18 stab wounds to the upper half of her body. *Id*. at ¶ 10. The cause of death was the two-inch stab wound to the right side of Frazier's neck striking her carotid artery and jugular vein. *Id*. The forensic pathologist who performed the autopsy opined that Frazier might have survived the attack if she had received prompt first-aid and surgery. *Id*.

Petitioner did not testify or present evidence at trial. *Id*. at ¶ 14. His defense counsel in closing argument conceded that Petitioner killed Frazier, and that it was not a self-defense case. *Id*. He argued, however, that the jury should convict Petitioner of second degree murder instead of first degree because Petitioner killed Frazier while acting under a sudden and intense passion as the result of a serious provocation of Frazier stabbing him. *See id*. at ¶¶ 14–15.

The jury, after being instructed on both first and second degree murder, found Petitioner guilty of first degree murder, and the trial court sentenced him to 60 years of imprisonment. *Id*. at ¶ 16. On direct appeal, Petitioner argued that the trial court: (1) failed to comply with Illinois Supreme Court Rule 431, which governs juror voir dire; (2) erred in allowing the introduction of

his 2003 prior domestic battery conviction at trial; and, (3) erred in allowing the introduction of evidence regarding his act of arson at Frazier's apartment in November 2004. *Illinois v. Chapman*, 2017 IL App (3d) 140878-U, ¶ 18 (2017). The Appellate Court of Illinois affirmed the conviction. *Illinois v. Chapman*, 2011 WL 10457883, at *8 (Ill. App. Ct. 2011).

Petitioner brought a petition for leave to appeal (PLA) before the Supreme Court of Illinois on the single issue of admission of the 2003 domestic battery conviction. *Chapman*, 2017 IL App (3d) 140878-U, ¶ 18. The Illinois Supreme Court granted the PLA, *Illinois v. Chapman*, 351 Ill. Dec. 5, 949 N.E.2d 1100 (Ill. 2011) (Table), and affirmed the appellate court decision that the domestic battery evidence was admissible, *Illinois v. Chapman*, 2012 IL 111896, ¶ 1, 358 Ill. Dec. 640, 965 N.E.2d 1119 (2012).

Petitioner then brought a postconviction petition under Illinois's Post Conviction Hearing Act, 725 ILCS 5/122-1. *See* Dckt. No. 10-2, at 11–46 of 68. The trial court summarily dismissed the petition. *Chapman*, 2017 IL App (3d) 140878-U, ¶ 20. On appeal, Petitioner's appointed appellate counsel believed that appeal would be frivolous and moved to withdraw under to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *See* Dckt. 10-2, at 47–48 of 68. The Appellate Court of Illinois granted the *Finley* motion and affirmed the dismissal of the postconviction petition. *Illinois v. Chapman*, No. 3-13-0134 (Ill. App. Ct. Nov. 7, 2014); *see also* Dckt. No. 10-3, at 1–2 of 113. Petitioner did not bring a PLA before the Supreme Court of Illinois in his postconviction proceeding. *See* Dckt. No. 1, at 3 of 151.

Petitioner then filed two additional proceedings in the state court: (1) a motion for relief from judgment under 735 ILCS 5/2-1401, and (2) a successive postconviction petition. *See* Dckt. No. 1, at 4 of 151; Dckt. No. 10-3, at 3. He also filed a habeas corpus petition pursuant to

28 U.S.C. § 2254 in this Court while those state court proceedings were pending. *Chapman v. Butler*, No. 15 C 3742 (N.D. Ill.) (Alonso, J.). The habeas corpus petition was denied with leave to reinstate within 90 days of the completion of the state court proceedings.[1] *Chapman*, No. 15 C 3742, Dckt. Nos. 18, 22. The parties provide no discussion regarding the results of the § 2-1401 proceedings in the state court, but as explained below, that oversight is irrelevant to the Court's consideration of the present habeas corpus petition.

On the successive postconviction petition, the trial court denied Petitioner leave to file the successive petition, and the state appellate court affirmed that denial. *Chapman*, 2017 IL App (3d) 140878-U, ¶¶ 23, 40 (2017). The successive postconviction proceedings ended with the Illinois Supreme Court's denial of Petitioner's PLA. *Illinois v. Chapman*, 417 Ill. Dec. 838, 89 N.E.3d 757 (Ill. 2017) (Table). Petitioner now brings the instant habeas corpus petition before this Court. *See* Dckt. No. 1. On June 30, 2020, Petitioner filed a supplemental habeas corpus petition. *See* Dckt. No. 30.

## II.      Analysis

### A.      Petitioner's Claims

Petitioner advances quite a few arguments in his habeas corpus petition before this Court. Specifically, he alleges:

---

1   A dismissal with leave to reinstate is treated as a stay and does not act as a final judgment until the time specified by the court for the reinstatement has expired. *Arrieta v. Battaglia*, 461 F.3d 861, 863 (7th Cir. 2006). The successive postconviction proceedings ended with the denial of Petitioner's PLA on September 27, 2017. *Illinois v. Chapman*, 417 Ill. Dec. 838, 89 N.E.3d 757 (Ill. 2017) (Table). Petitioner submitted the present habeas corpus petition to prison officials 75 days later on December 11, 2017. Dckt. No. 1, at 151 of 151.) Although the clerk filed this second habeas corpus petition under this new case number (17 C 9190), it is clear that Petitioner properly reinstated his case within 90 days of the conclusion of his state proceedings.

A.      Petitioner is actually innocent (Dckt. No. 1, at 8–9 of 151);

B.      Ineffective assistance of trial counsel for failing to:

      1.    investigate and consult with forensic psychologists to assist in the defense, *id*. at 10–11 of 151;

      2.    present evidence that would have mitigated the offense to second degree murder, *id*. at 12–13 of 151;

      3.    consult with Petitioner before trial to discuss defense strategy, *id*. at 20 of 151;

      4.    investigate the victim's background and history of domestic violence, *id*. at 20–21 of 151;

      5.    investigate evidence that the State produced in discovery, *id*. at 21–22 of 151;

      6.    object to the pastor's "inconsistent" and irrelevant testimony, *id*. at 23 of 151; and,

      7.    move to suppress petitioner's custodial statement and his "wiretapped" conversation with the pastor, *id*. at 23–24 of 151;

C.      Ineffective assistance of appellate counsel for failing to argue that:

      1.    the admission of the pastor's testimony about the prior arson violated Illinois's clergy privilege, *id*. at 25 of 151;

      2.    the trial court erred when it declined to give petitioner's proposed jury instruction concerning provocation, *id*.;

      3.    insufficient evidence to support a first degree murder conviction, *id*. at 26 of 151;

      4.    the plain error exception applied to the Illinois Supreme Court Rule 431 issue argued on direct appeal, *id*. at 27 of 151;

      5.    the prosecution suppressed the victim's arrest record and failed to correct false or inconsistent testimony from witnesses Karen Bergin and the pastor, *id*.;

      6.    trial counsel failed to object to the pastor's "inconsistent" testimony, *id*.;

7.      trial counsel failed to move to suppress Petitioner's custodial statement and "wiretapped" conversation with the pastor, *id*.;

8.      trial counsel failed to investigate and present evidence that would have mitigated the crime to second degree murder, *id*. at 27–28 of 151; and,

9.      trial counsel failed to adequately challenge the admission of the pastor's testimony under Illinois's clergy privilege, *id*. at 28 of 151;

D.      The jury instructions were defective because they failed to require the State to prove beyond a reasonable doubt that no mitigating circumstances existed to reduce the crime to second degree murder, *id*. at 14–15 of 151;

E.      The admission of petitioner's prior domestic battery conviction was unconstitutional, *id*. at 16 of 151;

F.      The prosecution suppressed a police record showing that the victim once had been arrested for domestic violence, *id*. at 17 of 151;

G.      The prosecution suppressed an "investigation report" concerning the pastor's discussion with Petitioner about a prior arson, *id*. at 18 of 151; and,

H.      The prosecution failed to correct false testimony from witnesses Bergin and the pastor, *id*. at 18–19 of 151.

Respondent answers that Claims A and D are non-cognizable, and all other claims are procedurally defaulted. *See* Lashbrook Resp., at 5–9 (Dckt. No. 9). The Court will consider Claims A and D before turning to Respondent's default arguments.

**B.      Petitioner's Non-Cognizable Claims**

**1.      Claim A:   Actual Innocence**

Petitioner argues in Claim A that he is actually innocent of first degree murder because he killed Frazier either in self defense or in a sudden rage because she was the initial aggressor when she stabbed him in the leg. Although actual innocence may be used to excuse a procedurally defaulted claim in a habeas corpus proceeding, it is an open question whether it is

8

also a freestanding cognizable claim. *Dist. Attorney's Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009); *Tabb v. Christianson*, 855 F.3d 757, 764 (7th Cir. 2017).

Despite the label, Petitioner does not make an actual innocence claim. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). Petitioner doesn't challenge the underlying acts that led to Frazier's death. Instead, he challenges whether those actions should have resulted in a first degree murder conviction. But that is a legal sufficiency argument, not an actual innocence claim. Thus, he cannot proceed with an actual innocence claim (assuming it is even cognizable).

Even if Petitioner had raised a legal sufficiency argument, that claim would be rejected. To the extent that Petitioner seeks to reduce his conviction to second degree murder from first degree murder, his claim would raise a non-cognizable question of state law. *Huizar v. Melvin*, 2020 WL 868529, at *4 (N.D. Ill. 2020); *Davis v. Lemke*, 2014 WL 562454, at *10 (N.D. Ill. 2014).

Petitioner could have raised a challenge to the sufficiency of the evidence supporting his first degree murder conviction under *Jackson v. Virginia*, 443 U.S. 307 (1979). But he has not done so. *See Davis*, No. 12 C 1550, 2014 WL 562454, at *10. And even if he had, the sufficiency challenge would have been meritless. There is ample evidence in the record to support the first degree murder conviction.

A jury could plausibly conclude that Petitioner committed first degree murder. During the stabbing, Petitioner threatened Frazier with his statement, "you want to stab a [N word], I will let you see how it feels." *Illinois v. Chapman*, 2012 IL 111896, ¶ 5, 358 Ill. Dec. 640, 965

N.E.2d 1119 (2012). And there were the events leading up to the stabbing, including the domestic battery conviction, arson of Frazier's apartment, and statement to the pastor that Petitioner would rather see Frazier dead than with anyone else. *Id.* at ¶¶ 11–14. That Petitioner threw Frazier back into the apartment when she reached the front door, dooming her to her fate because of his fear of witnesses, further demonstrates his intent. *See Chapman*, 2012 IL 111896, ¶ 7. Viewed as a whole, the evidence supports the conclusion that Petitioner intended to kill Frazier or do great bodily harm to her when he stabbed her to death. *See* 720 ILCS 5/9-1(a)(1). Claim A is denied.

### 2. Jury Instruction: Claim D

In Claim D, Petitioner argues that the state court erred when it rejected his proposed jury instruction that required prosecutors to prove that there were no mitigating factors at play when he killed Frazier in order to find him guilty of first degree murder. He argues that the instruction given to the jury failed to properly advise the jury of the burden of proof.

To challenge a jury instruction, the prisoner must show "both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009) (cleaned up).

Illinois law does not require the prosecution to disprove the mitigating factor as Petitioner wishes. "[P]ursuant to Illinois law, the [absence of a] mitigating factor is not an element of first degree murder that the State must prove – instead – the defendant has the burden of proving the mitigating factor by a preponderance of the evidence" to reduce a first degree murder charge to second degree. *See United States ex rel. Johnson v. Gaetz*, 2010 WL 2044930, at *4 (N.D. Ill.

10

2010).   Illinois's statutory scheme is consistent with due process because prosecutors are not required to "disprove beyond a reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused."   *Patterson v. New York*, 432 U.S. 197, 210 (1997).   All that due process requires, and what Petitioner received, is "the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."   *Id.*   Claim D is denied.[2]

### C.     Petitioner's Remaining Claims are Procedurally Defaulted

Respondent is correct that Petitioner's remaining claims are procedurally defaulted. Petitioner failed to properly preserve any claims for federal habeas corpus review through his state court proceedings.

---

2   On June 30, 2020, Petitioner filed a supplement to the habeas corpus petition that challenges the second degree murder statute, 720 ILCS 5/9-2, under the void for vagueness standard, as well as the jury instructions on second degree murder.   *See* Dckt. No. 30.   The Court does not see the relevance of Petitioner's challenge to the second degree murder statute.   Petitioner was convicted of first degree murder, not second degree murder.

What's more, Petitioner's assertion about the statute's vagueness is meritless.   "A statute can be impermissibly vague for either of two independent reasons."   *Hill v. Colorado*, 530 U.S. 703, 732 (2000). "First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.   Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."   *Id.*   Illinois's second degree murder statute is not vague for either of those reasons.   The statute prohibits the killing of another person, but allows the jury to consider certain mitigating factors. The statute is clear.   The jury simply found that he committed first degree murder.   There is nothing to suggest arbitrary or discriminatory enforcement of the statute.   Simply put, there are no constitutional concerns.

Petitioner next claims that the jury instructions were confusing and didn't clearly explain the burden of proof.   Petitioner's argument here rehashes his arguments in Claim D, which this Court has already rejected.   Moreover, as the Court explains above, the evidence is more than sufficient to uphold Petitioner's first degree murder conviction.   *See Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (holding that jury instruction errors are subject to harmless error review).

To preserve a claim for federal habeas corpus review, a prisoner must fairly present the claim by setting forth the operative facts and applicable law to the state courts. *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). The claim must be presented through one complete round of state court review, including via a PLA before the Supreme Court of Illinois. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-46 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018).

On direct appeal, Petitioner raised three claims in his appellate court appeal. But then he brought only one claim before the Supreme Court of Illinois. Illinois has a statute that allows prosecutors to introduce evidence of a prior domestic battery conviction when the defendant is later accused of the same (or similar) offense against the same victim. *See* 725 ILCSS 5/115-20(b). Petitioner argued that, under the plain language of the statute, such evidence could not be introduced in a murder trial. *See* Dckt. No. 10-1, at 7–20 of 71. That's the only claim that Petitioner brought to the state supreme court. Therefore, the other claims that Petitioner raised before the state appellate court, but not the state supreme court, are procedurally defaulted. *See Boerckel*, 526 U.S. at 845–46.

While it is true that Petitioner did raise one claim through the state supreme court, the claim he raised involved the interpretation of a state statute. *See* Dckt. No. 10-1, at 10 of 71; *see also Illinois v. Chapman*, 2012 IL 111896, ¶ 1, 358 Ill. Dec. 640, 965 N.E.2d 1119 (2012). Only federal claims are cognizable in habeas corpus proceedings; state evidentiary questions are non-cognizable. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018) (quoting *King v. Pfister*, 834 F.3d 808, 814 (7th Cir. 2016)) ("It is well-established that on habeas review, a federal court cannot disagree with a

12

state court's resolution of an issue of state law.").   Petitioner did not raise a federal claim through all levels of direct appeal as required.   Thus, Petitioner failed to preserve any claim on direct appeal.   *Duncan v. Henry*, 513 U.S. 364, 364–65 (1995) (per curiam) (presenting state law claim to state court does not preserve a federal claim for habeas corpus review because the state court was denied the "opportunity to pass upon and correct [the] alleged violation of its prisoners' federal rights") (cleaned up).[3]

Turning to Petitioner's first postconviction proceedings, Petitioner failed to bring a PLA in that proceeding.   So he did not exhaust any claims in his first postconviction proceedings. *See Boerckel*, 526 U.S. at 845–46.

In his second postconviction proceedings, Petitioner was denied leave to file his successive postconviction petition under 725 ILCS 5/122-1(f).   *Illinois v. Chapman*, 2017 IL App (3d) 140878-U, ¶¶ 23, 40 (2017).   That denial means that all claims Petitioner raised in his second postconviction proceeding are in procedural default because the state court relied on an adequate and independent state procedural ground when disposing of the case.   *Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016); *Boyd v. Watson*, 2019 WL 527524, at *8 (N.D. Ill. 2019).

Petitioner's final proceeding is his motion for relief from judgment under 735 ILCS 5/2-1401.   "Section 2-1401 only addresses factual issues – not legal or constitutional issues . . . ."

---

3   It is true that Petitioner invoked the U.S. Constitution's Due Process Clause at one point in his briefing before the Supreme Court of Illinois on direct appeal.   *See* Dckt. No. 10-1, at 18 of 71.   Petitioner's "passing reference" to federal principles within the larger context for what is clearly a state law claim does not fairly present a federal issue to the state court for exhaustion purposes.   *Chambers v. McCaughtry*, 264 F.3d 732, 738 (7th Cir. 2001).   Moreover, regardless of whether Petitioner preserved a federal issue on direct appeal, the evidence of Petitioner guilt without the introduction of the prior conviction for domestic violence is overwhelming.   *See Brecht v. Abrahamson*, 507 U.S. 619 (1993).

13

*Wright v. Williams*, 2016 WL 4077106, at *4 (N.D. Ill. 2016) (cleaned up).   Section 2-1401

proceedings "are not appropriate vehicles for raising and exhausting federal constitutional claims

. . . ."   *United States ex rel. Nitz v. Anglin*, 2014 WL 831610, at *7 (N.D. Ill. 2014).   And "a

pending motion for post judgment relief is not relevant to the Court's exhaustion analysis."

*Henderson v. Pierce*, 2011 WL 1740076, at *2 (N.D. Ill. 2011).   Therefore, Petitioner did not

exhaust any claims via his § 2-1401 proceeding.

 In summary, none of Petitioner's state court proceedings properly preserved claims for

federal habeas corpus review.   Respondent is correct that Petitioner's remaining claims in the

instant habeas corpus petition are procedurally defaulted.

 Petitioner cannot excuse his default through either cause and prejudice, nor fundamental

miscarriage of justice.   Cause is an "'objective factor, external to [Petitioner], that impeded [his]

efforts to raise the claim in an earlier proceeding.'"   *Weddington v. Zatecky*, 721 F.3d 456, 465

(7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)).   Examples of

cause include: (1) interference by officials that make compliance impractical; (2) a showing that

the factual or legal basis for a claim was not reasonably available to counsel; or (3) ineffective

assistance of counsel.   *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v.

Zant*, 499 U.S. 467 (1991)).

 Petitioner argues that his appellate counsel didn't notify him for six months that the

Supreme Court of Illinois had issued a decision on direct appeal.   *See* Dckt. No. 11, at 12 of 18.

Petitioner also argues that his postconviction appellate attorney was deficient for filing a *Finley*

motion.   *Id.*   The Court fails to see how either argument is relevant to the cause and prejudice

analysis.   Moreover, an ineffective assistance of counsel argument asserted to excuse a default

14

must, itself, be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Petitioner has not exhausted any ineffective assistance of counsel argument to excuse the default of this claim.

Petitioner also claims he did not receive access to the law library until he had a due date for his postconviction petition, and prison lockdowns repeatedly limited his access. *See* Dckt. No. 11, at 12 of 18. Petitioner, however, was able to file his postconviction petition without issue. The procedural default of Petitioner's claims from the first postconviction proceeding resulted from Petitioner's failure to bring a PLA. Petitioner points to the state appellate court's ruling that his claims were frivolous; which, he claims, is why he didn't bring a PLA. *See* Dckt. No. 1, at 3 of 151. He explains that he read the state court's ruling to mean that he should not appeal further. *Id.* However, Petitioner's misreading of the state court opinion and his lack of knowledge on claim preservation in state court for a future federal habeas corpus proceeding do not constitute cause to excuse procedural default. *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003) (instructing that prisoner's ignorance of the law is not cause to excuse default).

This leaves the fundamental miscarriage of justice (actual innocence) gateway to excuse Petitioner's default. In order to defeat a default with actual innocence, Petitioner must demonstrate that "'in light of [] new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This standard is "demanding" and "seldom met." *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Petitioner must present new, reliable evidence that was not presented at trial – such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence –

15

to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see also McDonald v. Lemke*, 737 F.3d 476, 483–84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence:   perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'").

Petitioner argues there is evidence demonstrating his innocence.   One item he points to is the prosecution's pretrial discovery disclosures.   *See* Dckt. No. 14, at 4–5 of 5.   Prosecutors turned over an appendix containing "material or information within the possession or control of the State, which tends to negate the guilt of Robert J. Chapman as to the offense charged, or would tend to reduce his punishment for the offense."   *Id*. at 5 of 5.

The disclosure form, however, is a standard discovery form with a section meant to comply with the prosecution's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner concedes he does not know what evidence was actually disclosed by the prosecution. *See* Dckt. No. 14, at 2 of 5.   All this form shows is the prosecution provided any *Brady* material found during discovery, not that Petitioner is actually innocent.

Petitioner points to three other pieces of evidence to demonstrate his innocence:   a police report that shows that Frazier was arrested for domestic abuse that the prosecution allegedly destroyed; an allegedly suppressed report concerning the admissibility of the pastor's testimony; and trial counsel's alleged ineffectiveness in failing to obtain a forensic psychologist to assist in the defense.   *See* Dckt. No. 11, at 13 of 18.

The Court fails to see how any of this alleged evidence demonstrates Petitioner is actually innocent.   None of it addresses his own statements to the police, nor Bergin's implication of him

16

in the murder.   The fact that Frazier had a prior domestic abuse arrest has no impact on the analysis.   The record is clear that Petitioner and Frazier had a contentious relationship, and included the fact that Frazier stabbed Petitioner before he turned the knife on her.   As explained with Claim A, none of this evidence changes the fact that the record shows Petitioner killed Frazier out of his anger toward her.

On the alleged report on the pastor's testimony, the state court already resolved that issue when it found the clergyman's testimony admissible.   Admissibility is a matter of state law, so this Court is bound by the state court's ruling on the matter.   *See Kimbrough v. Neal*, 941 F.3d 879, 882 (7th Cir. 2019).

Finally, counsel's alleged failure to obtain a forensic psychologist to assist in the defense does not demonstrate Petitioner's innocence.   There is nothing to suggest a psychologist would have provided an opinion in Petitioner's favor.   And, as discussed above, Petitioner overtly expressed his animosity towards Frazier, set fire to her apartment, and ultimately killed her.   An expert's opinion cannot change Petitioner's own comments and actions.   Petitioner cannot excuse the procedural default.   All remaining claims are denied.   The habeas corpus petition is denied on the merits in full.

## III.   Certificate of Appealability and Notice of Appeal Rights

The Court declines to issue a certificate of appealability.   Petitioner cannot make a substantial showing of the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Petitioner's claims.   *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

17

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wants the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion under to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled on. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled on only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## IV. Conclusion

Petitioner's motions to supplement the habeas corpus petition (Dckt. Nos. 28, 29) are granted. Petitioner's habeas corpus petition (Dckt. No. 1) and supplemental habeas corpus petition (Dckt. No. 30) are denied on the merits. Any other pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Court directs the Clerk to: (1) terminate Respondent Jacqueline Lashbrook and replace her with Petitioner's current custodian, Alex Jones, Acting Warden, Menard Correctional Center; (2) alter the case caption to

18

*Chapman v. Jones*; and, (3) enter a judgment in favor of Respondent and against Petitioner.

Civil Case Terminated.

Date:   July 10, 2020                                 _____

                                                                    Steven C. Seeger
                                                                    United States District Judge